# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| Kaya Lawrence, individually and on behalf of those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ZF FRIEDRICHSHAFEN AG, ZF-TRW AUTOMOTIVE HOLDINGS CORP., TRW AUTOMOTIVE INC., TRW AUTOMOTIVE U.S. LLC, TRW VEHICLE SAFETY SYSTEMS INC., TOYOTA MOTOR CORP., TOYOTA MOTOR SALES, U.S.A., INC., and TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., | CASE NO.: 4:19-cv-369<br>CLASS ACTION<br><br><u>JURY TRIAL DEMANDED</u> |

## INDIVIDUAL AND CLASS ACTION COMPLAINT

For her complaint against ZF Friedrichshafen AG, ZF-TRW Automotive Holdings Corp., TRW Automotive Inc., TRW Automotive U.S. LLC, TRW Vehicle Safety Systems Inc., Toyota Motor Corp., Toyota Motor Sales, U.S.A., Inc., And Toyota Motor Engineering & Manufacturing North America, Inc., (collectively "Defendants"), Plaintiff Kaya Lawrence, individually, and on behalf of all other members of the public similarly situated, alleges as follows:

## NATURE OF THE ACTION

1

1.      This case presents another example of an airbag manufacturer and automakers conspiring to conceal a deadly airbag defect, once again putting profits ahead of safety. Indeed, over the past five years, tens of millions of U.S. consumers have seen their Takata-manufactured airbags recalled for a deadly defect resulting in seven automakers paying a collective $1.5 billion in class action settlements.

2.      This action concerns defective airbag control units ("ACUs") designed and manufactured by ZF Friedrichshafen AG, ZF-TRW Automotive Holdings Corp., and its related entities ("TRW"), which are installed in certain Toyota, Honda, Acura, Hyundai, Kia, Mitsubishi, and Fiat Chrysler vehicles. Because of their defective design, TRW's ACUs are unreasonably susceptible to damage or electrical overstress conditions, which prevent the vehicles' airbags from deploying and the seatbelt pretensioners from engaging during a collision, thereby failing to protect vehicle occupants in a crash. Defendants manufactured, sold, and leased vehicles containing TRW's Defective ACUs—concealing the defect and knowingly misrepresenting that their vehicles are safe for consumers and the public.

3.      The defect in the ACU occurs because the application-specific integrated circuit ("ASIC"), the electronic component within the ACU that monitors signals from crash sensors, becomes over stressed by excess electrical energy generated during the crash. This ASIC defect then causes a failure in the ACU. This

2

failure can prevent airbag deployment and seatbelt pretensioner engagement or otherwise affect the proper operation of the ACU.

4.     All TRW ACUs at issue share a common, uniform design defect. In this case, the National Highway Traffic Safety Administration ("NHTSA") estimates some 12.3 million vehicles may contain a Defective ACU designed and manufactured by TRW and supplied to numerous automakers.

5.     Automakers that purchased TRW's Defective ACUs were involved in their design and testing and knew or should have known of the ACUs' common, uniform design defect.

6.     TRW became aware of the ACU Defect as early as 2011 but did nothing to protect consumers or warn of the product dangers until 2018. From 2011 through 2015, TRW investigated airbag non-deployments but failed to inform NHTSA that there was an issue until the end of 2015.

7.     The Toyota Defendants had knowledge that TRW's ACUs were experiencing the same problems in other automakers' vehicles. Indeed, no later than January 2016, TRW reached out to automakers regarding the nature of the ACU Defect.

8.     TRW and automakers received word of startling airbag failures in the field no later than July 28, 2013, when a TRW airbag failed to deploy in a 2012 Kia Forte, in San Leandro, CA. Another airbag non-deployment incident took place on

December 27, 2013 involving a 2011 Hyundai Sonata in Myrtle, MS, and on March 13, 2016 there was yet another field non-deployment event involving a 2011 Hyundai Sonata in Omaha, NE. In each of these incidents, the ACU Defect led to a fatality.

9.    Fiat Chrysler issued a public recall of the Defective ACUs in the United States in September 2016, putting all automakers, including Toyota Defendants, on further notice of the defect.

10.    Despite Fiat Chrysler's initial recall and their independent concerns about the ACU Defect, Defendants utterly failed to take reasonable, let alone sufficient measures, to investigate the defect or protect purchasers, lessees, and the general public.

11.    As overwhelming evidence of the defect grew, Defendants did not issue recalls, warn consumers, or otherwise protect them from the risk, through, for example, systematic loaner vehicle programs. Toyota continues to refuse to recall its affected vehicles, despite knowing they contain the same deadly ACU Defect.

12.    TRW and Toyota Defendants knew, and certainly should have known, that the TRW ACUs installed in millions of vehicles were defective. By concealing their knowledge of the nature and extent of the ACU Defect from the public, while continuing to advertise their products as safe and reliable, Defendants demonstrated a blatant disregard for public welfare and safety. Moreover, Defendants violated

their affirmative duty, imposed under the Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), to promptly advise customers about known defects.

13.    As a result of this misconduct, Plaintiff and members of the proposed Classes were harmed and suffered actual damages. Plaintiff and the Classes did not receive the benefit of their bargain; rather, they purchased or leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Purchasers or lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the ACU Defect been disclosed. Plaintiff and the Classes were deprived of having a safe, defect-free airbag installed in their vehicles, and Defendants unjustly benefited from their unconscionable failure in recalling defective products, as they have avoided incurring the costs associated with recalls and installing replacement parts for years.

14.    Plaintiff and the Classes also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs.

15.    Plaintiff and the Classes also suffered damages as a result of Defendants' concealment and suppression of the facts concerning the safety, quality, and reliability of vehicles with the Defective ACUs. Defendants' false

representations and omissions concerning the safety and reliability of those vehicles and their concealment of the known safety defects plaguing those vehicles caused Plaintiff and Class members to purchase, lease, or retain vehicles of diminished value.

## JURISDICTION AND VENUE

16.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1961, 1962 and 1964, because Plaintiff's Magnusson-Moss claim arises under federal law. Also, jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Classes are citizens of states different from each Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are citizens.

17.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

18.    This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction.

19.     This Court also has personal jurisdiction over Defendants under 18 U.S.C. § 1965(d) because it is found, has agents, or transacts business in this District.

20.     Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

## THE PARTIES

### I.     Defendants

21.     Defendant ZF Friedrichshafen AG ("ZF-TRW") is a foreign for-profit corporation with its principal place of business in Friedrichshafen, Baden-Wurttemberg, Germany. ZF-TRW is a worldwide supplier of driveline and chassis technology for cars and commercial vehicles, including active and passive safety technology. ZF-TRW, either directly or through its wholly- owned subsidiaries, manufactures ACUs for distribution in the United States and ultimate use in Florida, including the ACUs at issue in this litigation. ZF-TRW delivers its products, including the ACUs at issue in this litigation, into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

22.    ZF-TRW Automotive Holdings Corp. ("ZF-TRW Automotive Holdings") is a subsidiary of ZF-TRW with its principal place of business in Livonia, Michigan. ZF-TRW Automotive Holdings is an American supplier of automotive systems, modules, and components to automotive manufacturers, including Toyota Defendants. ZF-TRW Automotive Holdings sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs in this litigation. ZF-TRW Automotive Holdings delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

23.    TRW Automotive Inc. ("TRW Automotive") is a subsidiary of ZF-TRW with its principal place of business in Livonia, Michigan. TRW Automotive is an American supplier of automotive systems, modules, and components to automotive manufacturers, including Toyota Defendants. TRW Automotive sells, designs, manufactures, tests, markets, and distributes ACUs in the United States. TRW Automotive manufactures ACUs in the United States, including ACUs at issue in this litigation. TRW Automotive delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

24.    TRW Automotive U.S. LLC ("TRW Automotive U.S.") is a subsidiary of TRW Automotive with its principal place of business in Livonia, Michigan. TRW

Automotive U.S. is an American supplier of automotive systems, modules, and components to automotive manufacturers, including the Toyota Defendants. TRW Automotive U.S. sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation. TRW Automotive U.S. delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

25.    TRW Vehicle Safety Systems Inc. ("TRW Vehicle Safety Systems") is a subsidiary of TRW Automotive Holdings with its principal place of business in Farmington Hills, Michigan. TRW Vehicle Safety Systems is an American supplier of automotive systems, modules, and components to automotive manufacturers, including the Toyota Defendants. TRW Vehicle Safety Systems sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation. TRW Vehicle Safety Systems delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

26. Defendants ZF-TRW, ZF-TRW Automotive Holdings, TRW Automotive, TRW Automotive U.S., and TRW Vehicle Safety Systems are collectively referred to as "TRW" or the "TRW Defendants." TRW is the manufacturer of all Defective ACUs that are the subject of this Complaint.

27.     Defendant Toyota Motor Corporation ("Toyota") is the world's largest automaker and the largest seller of automobiles in the United States. Toyota is a Japanese Corporation headquartered in Toyota City, Aichi Prefecture, Japan.

28.     Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota U.S.A.") is a wholly-owned subsidiary of Toyota Motor Corporation and is responsible for the marketing, sales, and distribution in the United States of automobiles manufactured by Toyota. Toyota U.S.A. is headquartered in Torrance, California and is a subsidiary of Toyota.

29.     Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is headquartered in Erlanger, Kentucky with major operations in Arizona, California, and Michigan. TEMA is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the U.S., Mexico, and Canada. TEMA is a subsidiary of Toyota.

30.     Defendants Toyota, Toyota U.S.A., and TEMA are collectively referred to as "Toyota" or the "Toyota Defendants." Toyota vehicles sold in the United States contain Defective ACUs manufactured by the TRW Defendants. The Toyota Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

## II.     **Plaintiff**

31.    Plaintiff Kaya Lawrence resides in Tallahassee, Florida. She owns a 2019 Toyota Corolla, which she purchased new in August 2018 from Legacy Toyota in Tallahassee, Florida. To Plaintiff's knowledge, the airbags in her vehicle have not been repaired or replaced. The value of Plaintiff's 2019 Toyota Corolla has been diminished as a result of the ACU Defect. If Plaintiff had known about the ACU Defect, Plaintiff would not have purchased the 2019 Toyota Corolla or would not have paid as much as she did for it.

## GENERAL FACTUAL ALLEGATIONS

### I.    Definitions

32.    Plaintiff brings this action on behalf of herself and all persons similarly situated who purchased or leased Class Vehicles (defined below). Plaintiff seeks redress individually and on behalf of those similarly situated for economic losses stemming from Defendants' manufacture, sale or lease, and false representations concerning the defective airbags in the Class Vehicles, including but not limited to diminished value. Plaintiff, on behalf of herself and those similarly situated, seeks to recover damages, statutory penalties, and injunctive relief/equitable relief.

33.    "Defective ACUs" refers to all ACUs manufactured by TRW ("TRW ACUs") that contain the ACU Defect, including (a) all ACUs subject to recall or currently under investigation by NHTSA, identified in the table in paragraph 35 below; and (b) all TRW ACUs in vehicles subject to any subsequent expansion of

pre-existing recalls or new recalls announced prior to the date of an order granting class certification, relating to the tendency of such ACUs to fail and prevent the deployment of airbags and engagement of seatbelt pretensioners.

34.    All Defective ACUs contain the ACU Defect. As a result of the ACU Defect, Defective ACUs have an unreasonably dangerous tendency to fail to deploy airbags and engage seatbelt pretensioners.

35.    The following table identifies, to the best of Plaintiff's understanding, and without the benefit of discovery, the vehicles manufactured that contain the ACU Defect.  "Class Vehicles" are the make and model vehicles manufactured by Toyota as identified in the chart below:

| Automaker | Make | Model | Model Years |
|---|---|---|---|
| Hyundai | Hyundai | Sonata | 2011-2013 |
| Hyundai | Hyundai | Sonata Hybrid | 2011-2012 |
| Honda | Acura | RLX | 2014-2019 |
| Honda | Acura | RLX Hybrid | 2014-2019 |
| Honda | Acura | TL | 2012-2014 |
| Honda | Acura | TLX | 2015-2017 |
| Honda | Acura | TSX | 2012-2014 |
| Honda | Acura | TSX Sport Wagon | 2014 |
| Honda | Acura | TSX Sport Wagon | 2012-2014 |
| Honda | Honda | Accord | 2013-2015 |
| Honda | Honda | Accord Hybrid | 2014-2015 |
| Honda | Honda | Civic | 2012-2015 |
| Honda | Honda | Civic GX | 2012-2015 |
| Honda | Honda | Civic Hybrid | 2012-2015 |
| Honda | Honda | Civic SI | 2012-2015 |
| Honda | Honda | CR-V | 2012-2016 |

| Honda | Honda | Fit | 2012-2017 |
|-------|-------|-----|-----------|
| Honda | Honda | Fit EV | 2013-2014 |
| Honda | Honda | Ridgeline | 2012-2014 |
| Hyundai | Hyundai | Sonata | 2013-2019 |
| Hyundai | Hyundai | Sonata Hybrid | 2013-2019 |
| Kia | Kia | Sedona | 2011-2012 |
| Kia | Kia | Optima Hybrid | 2011-2012 |
| Kia | Kia | Optima | 2011-2013 |
| Kia | Kia | Forte | 2010-2013 |
| Kia | Kia | Forte Koup | 2010-2013 |
| Kia | Kia | Optima | 2013-2019 |
| Kia | Kia | Optima Hybrid | 2012-2016 |
| Kia | Kia | Sedona | 2014 |
| Toyota | Toyota | Avalon | 2012-2018 |
| Toyota | Toyota | Avalon Hybrid | 2013-2018 |
| Toyota | Toyota | Corolla | 2011-2019 |
| Toyota | Toyota | Corolla IM | 2017-2018 |
| Toyota | Toyota | Corolla Matrix | 2011-2013 |
| Toyota | Toyota | Sequoia | 2012-2017 |
| Toyota | Toyota | Tacoma | 2012-2019 |
| Toyota | Toyota | Tundra | 2012-2017 |

## II.    **TRW ACUs Have a Common, Uniform Defect**

36.    The part of the airbag at issue in this matter is the ASIC that triggers airbag deployment. The Toyota Defendants equipped each of the Class Vehicles with an Advanced Airbag System as well as an ACU. The ACU was designed and manufactured by TRW. The ACU is designed to detect when a crash will occur and deploys the airbag to prevent injury to the driver and passengers of the vehicle. A crucial component of this crash detection system is an application-specific integrated

circuit ("ASIC"). When the ASIC is functioning properly, the ACU will detect the severity of a crash, deploy the airbags if necessary, and engage the seatbelt pretensioners.

37.    The ASIC in the Class Vehicles' ACUs are defective because they are susceptible to electrical overstress ("EOS") which allows excess electrical signals produced during the crash to overload the ASIC and prevent the deployment of the airbag and the seat belt pretensioners.

38.    A failure of the ASIC due to EOS greatly increases the risk of injury to the vehicle occupants during a crash. According to media reports, there were six crashes in Hyundai and Kia vehicles as of March 2018 where the ASIC of the ACU was overstressed.[1] From these accidents, four people were killed and six others were injured.[2]

39.    In 2016, Fiat Chrysler Automobiles ("FCA") issued a recall of over 1.4 million vehicles due to this defect.

40.    After NHTSA began investigating other car manufacturers for similar non-deployments due to the TRW ACU, it was revealed that both Kia and Hyundai brand cars from model years 2011 through 2013 were plagued by this same defect.

---

[1] *Hyundai and Kia Under Scrutiny for Air Bag Failures After 4 Deaths*, NBC News, March 18, 2018, https://www.nbcnews.com/news/us-news/hyundai-kia-under-scrutiny-air-bag-failures-after-4-deaths-n857701.
[2] *Id.*

In February 2018, Hyundai issued an initial recall for 150,000 vehicles due to the defect, but in October 2018 increased the number of vehicles recalled to 581,000. In August 2018, Kia issued a recall for 507,000 vehicles due to the same defect.

41.    On April 19, 2019, NHTSA issued a statement that the Office of Defects ("ODI") Investigation decided to expand its investigation into the ACU ASIC Defect, which includes an estimated 12.3 million vehicles.[3]

42.    Defendants knew and had reason to know of this defect well before the issuance of any recalls in 2018 but concealed this defect from the public. Defendants worked in concert to delay the reporting of this defect to consumers and to regulators to protect each Defendant's financial interests. Further, Defendants acted to conceal the depth of this problem and the number of incidents that occurred worldwide.

## III.    <u>Defendants Knew of the ACU Defect</u>

43.    Since no later than 2011, there have been countless non-deployment incidents caused by the Defective ACUs. Yet despite involvement in investigations and knowledge of the ACU Defect, Defendants have refused to recall vehicles containing the ACU Defect and/or have improperly narrowed the scope of the affected vehicles in order to save costs and avoid negative publicity.

---

[3] NHTSA, ODI Resume, April 19, 2019, Investigation: EA 19-001, https://static.nhtsa.gov/odi/inv/2018/INOA-PE18003-9810.PDF.

44.    As early as August 2011, automakers and TRW knew of the problems with the ASIC but chose to cover up these facts. There was a motor vehicle crash in China involving a Kia Forte where the airbags did not deploy. Hyundai MOBIS Co. Ltd.[4] ("MOBIS") requested that TRW analyze the crash data to determine why there was no deployment. TRW observed that there was damage to the ASIC that was "consistent with EOS."[5] Instead of investigating the matter further, the Hyundai-Kia Motor Company ("HKMC") "communicat[ed] its assessment that the incident was a commanded nondeployment"[6] and considered the matter closed.

45.    Despite HKMC's attempts to sweep the defect under the rug, automakers became aware of several other non-deployment incidents. In February 2012, Hyundai was notified of a collision involving a 2011 Hyundai Sonata in which the airbag failed to deploy. The investigation revealed that the ASIC failed due to EOS. However, Hyundai concluded that the problem was due to "numerous

---

[4] Hyundai MOBIS Co. Ltd. is a foreign limited liability company under the laws of South Korea that is a parts supplier for the Kia and Hyundai family of companies.
[5] Part 573 Safety Recall Report filed by ZF-TRW, TRW Automotive Inc. (ZF-TRW) Chronology, *available at* https://oemdtc.com/1408/air-bags-seat-belt-pretensioners-may-be-disabled-trw-air-bag-control-units [hereinafter TRW Chronology].
[6] *Id.*

aftermarket accessories installed in the vehicle" and was not related to any prior non-deployment accidents.[7]

46.    In March 2012, MOBIS again referred a post-crash analysis to TRW related to failed airbag deployment—this time for a crash involving a Kia Forte in Egypt. Once again, TRW found that the ASIC damage was "consistent with EOS," and once again HKMC "communicat[ed] its assessment that the incident was a commanded nondeployment."[8] After this analysis in May 2012, TRW communicated directly with HKMC and MOBIS "about the investigation of field events observed with EOS."[9] As of 2012, nothing was reported publicly about the danger of EOS of ASICs in the ACUs manufactured and installed in the Class Vehicles.

47.    As late as May 2013, TRW documented a "potential warranty concern" related to the ACU ASIC.[10] This document was circulated to automakers and described a potential condition of the ASIC that resulted in an intermittent power

---

[7] Part 573 Safety Recall Report filed by Hyundai, Attachment A, Amended Chronology, *available at* https://static.nhtsa.gov/odi/rcl/2018/RMISC-18V137-8310.pdf [hereinafter Hyundai Chronology].

[8] TRW Chronology, *supra* note 5.

[9] *Id.*

[10] Part 573 Safety Recall Report filed by FCA, FCA Chronology, *available at* https://static.nhtsa.gov/odi/rcl/2016/RMISC-16V668-4323.pdf [hereinafter FCA Chronology].

connection, which may cause EOS damage to the ASIC.[11] This document also recommended countermeasures to prevent such damage.[12]

48.    In March 2014, Kia received notice of a lawsuit complaint alleging non-deployment of an airbag in a 2012 Kia Forte. Approximately one year later in March 2015, Kia began to examine the airbag and determine the cause for the failure to deploy.[13]

49.    In February 2015, Hyundai requested that TRW review data from another crash in which the airbags in a Hyundai Sonata did not deploy.[14] TRW did not analyze these results until April 2016.[15] Once again, TRW found that the ASIC damage was "consistent with EOS," and once again HKMC "communicat[ed] its assessment that the incident was a commanded nondeployment."[16]

50.    In May 2015, Hyundai was notified of a collision involving yet another 2011 Sonata where the airbags failed to deploy. Hyundai did not inspect the vehicle or the ACU until October 2015, and also requested assistance from TRW. TRW's analysis indicated that internal damage to the ASIC was due to EOS.[17] NHTSA

---

[11] *Id.*

[12] *Id.*

[13] Part 573 Safety Recall Report filed by KMA, KMA Chronology, *available at* https://static.nhtsa.gov/odi/rcl/2018/RMISC-18V363-5570.pdf [hereinafter Kia Chronology].

[14] TRW Chronology, *supra* note 5.

[15] *Id.*

[16] *Id.*

[17] Hyundai Chronology, *supra* note 7.

investigation into the ACU ASIC Defect began at some point during the summer of 2015.[18]

51.     While automakers were investigating several airbag non-deployment crashes in 2015 and 2016, TRW was also performing an in depth analysis of several crashes related to FCA's investigation into the ACU ASIC Defect.[19] TRW was heavily involved in FCA's investigation into 11 crashes involving airbag non-deployment.[20] As early as June 2015, TRW proposed that the EOS failures of the ASIC could be due to excess electrical charge generated during the crash,[21] which was a critical development in the investigation. Despite this knowledge, TRW refused to connect the EOS problems in vehicles to the defect discovered in the FCA investigation until February 2018.[22]

52.     From June 2015 through January 2016, Kia attempted to determine the cause of two non-deployments in Kia Forte vehicles. Kia, MOBIS, and TRW performed inspections and analyses of these vehicles and incidents.[23] TRW analyzed the data in early December 2015 and found that in both vehicles' ACUs, the ASICs were damaged by EOS.[24] Once again HKMC stepped in and "communicat[ed] its

---

[18] Kia Chronology, *supra* note 14.
[19] FCA Chronology, *supra* note 10
[20] *Id.*
[21] *Id.*
[22] Hyundai Chronology, *supra* note 7.
[23] Kia Chronology, *supra* note 14.
[24] TRW Chronology, *supra* note 5.

assessment that one of the incidents was a commanded nondeployment and the other [was] under investigation."[25]

53.    According to information filed with NHTSA, in January 2016, TRW communicated with the automakers regarding the EOS effect on the ACU. Then on February 2016, TRW met with NHTSA, at TRW's request, to discuss its investigation of EOS observed on its ACUs and incidents involving non-deployment of airbags. Also, that same day, TRW advised Hyundai that TRW had provided information regarding all manufacturers with the Defective ACUs to NHTSA.

54.    Between July and November 2016, Hyundai received reports of two additional 2011 Sonata crashes where airbag non-deployments were observed.[26] Hyundai referred the ACUs for review to TRW. TRW downloaded the data in November 2016 and February 2017.[27] In August 2016, Kia requested that TRW download and review ACU data for another Kia Forte crash involving the non-deployment of an airbag.[28] In March 2017, MOBIS requested an analysis for another crash involving a Kia Forte in China where the airbag did not deploy.[29]

---

[25] *Id.*
[26] Hyundai Chronology, *supra* note 7.
[27] TRW Chronology, *supra* note 5.
[28] *Id.*
[29] *Id.*

55.     In August 2017, TRW analyzed the data from two of the Hyundai Sonata crashes and one of the Kia Forte crashes.[30] In all three crashes, TRW observed damage to the ASICs that is consistent with EOS. HKMC then communicated its usual message "that all three incidents were commanded nondeployments."[31]

56.     On February 27, 2018, Hyundai issued the voluntary recall of all 2011 model year Sonatas due to the ACU Defect. Then on June 1, 2018, Kia agreed to voluntarily recall all 2010 through 2013 model year Fortes and Forte Koups, all 2011 through 2013 model year Optimas, Opitma Hybrids, and all 2011 through 2012 model year Sedonas. Finally, in October 2018, Hyundai expanded its recall to all 2011 through 2013 model year Sonatas, and all 2011 through 2012 Sonata Hybrids.

57.     On March 16, 2018, NHTSA announced its Preliminary Evaluation of certain Hyundai vehicle make and models following reports of air bag non-deployment in frontal crashes (identified as PE18-003). Although initially focused on certain Hyundai vehicles, NHTSA identified TRW as the supplier of the Defective ACUs, thereby putting other automakers, including Toyota, on notice that their vehicles contained the same Defective ACUs NHTSA was investigating. At

---

[30] *Id.*

[31] *Id.*

this point, Toyota was well aware that their vehicles with TRW ACUs contained a defect.

58.    On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect involving TRW ACUs from a Preliminary Evaluation to an Engineering Analysis, in order to "expand the scope of the investigation to include [TRW], the Tier-one supplier and any manufacturers who installed this unit in production vehicles." NHTSA's upgrade to an Engineering Analysis only further confirmed what Toyota knew or should have known as to the severity of the ACU Defect and widespread scope of their affected vehicles.[32]

59.    Notably, NHTSA's Engineering Analysis also disclosed that ODI had recently identified two substantial front crash events involving airbag non-deployments in 2018 and 2019 Toyota Corollas. NHTSA found that, following the collisions, the ACUs could not be read with an Event Data Recorder ("EDR"), similar to the condition found in other incidents involving non-deployment of airbags in other OEMs' vehicles caused by EOS. NHTSA further concluded EOS was the likely cause of the non-deployments in the Toyota incidents. One of these crash events resulted in a fatality.[33]

---

[32] ODI Resume, *supra* note 3.

[33] *Id.*

60.    As discussed above, Toyota Defendants had knowledge of the ACU Defect not only by their knowledge of each of the recalls issued by Hyundai, Kia, and Chrysler and TRW's communications advising them of NHTSA's investigation into the ACU Defect, but also because of several customer complaints involving the ACU Defect in their own vehicles.

61.    Toyota was aware or should have been aware of several customer complaints regarding the ACU Defect in Toyota vehicles that were submitted to NHTSA. For example, in May 2013, NHTSA received a customer complaint about an accident involving a 2011 Toyota Corolla. The vehicle was involved in a serious traffic accident where the car was totaled, but the airbags did not deploy. The driver sustained serious injuries requiring multiple surgeries, after being launched from the driver's seat. The insurance adjuster informed the customer to contact Toyota to inquire about the airbags not deploying.

62.    In September 2014, NHTSA received a complaint about a 2011 Toyota Corolla that was totaled but none of the airbags deployed even though the impact occurred at about 40 miles per hour.

63.    In April 2014, NHTSA also received a complaint about an accident involving a 2011 Toyota Corolla, where the entire front end was crushed and the part of the vehicle under the steering wheel was pushed in towards the driver seat. None of the airbags in the vehicle deployed and as a result, the driver hit her head

against the windshield, cracking the windshield. The driver also sustained chest contusions from the impact against the steering wheel. The customer contacted Toyota directly about the airbag's failure to deploy, but according to the customer, Toyota called her "a liar." The customer requested the information from the EDR to be downloaded and read, but Toyota never responded to her request.

64.    NHTSA also received a complaint in January 2015 that a 2013 Toyota Avalon rammed into a pole, but the airbags failed to deploy. "THE MANUFACTURER WAS MADE AWARE OF THE FAILURE."

65.    In March 2016, NHTSA was also informed that a 2014 Toyota Avalon Hybrid was involved in a front-end collision, in which the car was totaled and the driver sustained injuries to the head, ribs, and shoulder, because the airbags failed to deploy.

66.    NHTSA was also informed in March 2016 about another accident involving a 2011 Toyota Corolla that suffered an impact between 50 to 60 miles per hour. The entire front of the car was damaged, the bumper completely torn off, and the engine forced back from the frame of the vehicle. Nevertheless, none of the airbags deployed. Even though the driver was wearing his seatbelt, he hit his head near the windshield and sustained significant whiplash from the impact. The customer complained: "WE CANNOT BELIEVE THAT THE AIRBAGS WERE [not] DEPLOYED FROM AN IMPACT LIKE THIS. WE CHECKED AND

THERE ARE NO RECALLS REGARDING AIRBAGS FOR THIS CAR. SOMETHING IS NOT RIGHT. THEY SHOULD HAVE GONE OFF AND PROTECTED MY HUSBAND DURING THIS COLLISION."

67.    In August 2016, it was also reported to NHTSA that the driver of a 2014 Toyota Avalon was involved in a crash wherein the vehicle was traveling approximately 50 miles per hour, but the airbags failed to deploy. "THE MANUFACTURER WAS NOTIFIED OF THE FAILURE."

68.    In April 2018, NHTSA was informed of another accident involving a 2014 Toyota Avalon Hybrid where the car was hit at 65 miles per hour, rolled over, and then was rammed into a rail. None of the airbags deployed and the driver of the vehicle suffered a head injury with a laceration and mild brain trauma.

69.    Despite its knowledge of the Fiat Chrysler, Hyundai, and Kia recalls related to the same Defective ACU contained in its own vehicles, and numerous customer complaints about the ACU Defect, Toyota concealed the ACU Defect from its customers, NHTSA, and the public. To date, Toyota has refused to issue a recall or admit its vehicles contain the same, uniform ACU Defect.

## IV.    <u>Toyota Defendants' Sold Their Vehicles As "Safe" and "Reliable"</u>

70.    At all relevant times, in advertisements and promotional materials, the Toyota Defendants continuously maintained that Toyota-branded vehicles were safe and reliable and concealed the ACU Defect. Plaintiff, directly or indirectly, was

exposed to these advertisements or promotional materials prior to purchasing or leasing Class Vehicles. The misleading statements about Class Vehicles' safety in the Toyota Defendants' advertisements and promotional materials were material to decisions to purchase or lease Class Vehicles.

71.     The Toyota Defendants advertise Toyota-branded vehicles as safe and reliable vehicles with safety as one of their top priorities. Examples of Toyota's safety and reliability representations include the following:

a.     In 2015, Toyota represented on its website that "[f]or us, the journey towards a safe road never ends. This belief, along with our collaborative research efforts, drives us to create advancements and innovations in safety that have helped (and continue to help) prevent crashes and protect people."

b.     In 2018, Toyota represented on its website that the "2018 Toyota Corolla [i]s an IIHS [Top Safety Pick]."

c.     In 2019, Toyota represented in its brochure that "[s]afety is always in style. So we made it standard."

d.     In 2019, Toyota also represented in its brochure that "[a] driver and front passenger Advance Airbag System, driver and front passenger seat-mounted side airbags, front and rear side curtain airbags, and driver knee and front passenger seat-cushion airbags

26

come standard on Corolla. It's all part of a system designed to help keep you safe."

72. Contrary to these representations and countless others like them, the Toyota Defendants failed to equip the Class Vehicles with ACUs that would meet these standards and failed to disclose to consumers that their vehicles actually contained dangerous and Defective ACUs.

## TOLLING OF THE STATUTE OF LIMITATIONS

### I.    Fraudulent Concealment

73. Defendants have known of the ACU Defect as early as August 2011, when they first learned that airbag non-deployments were caused by the ACU Defect as a result of EOS. Defendants obtained further knowledge of the ACU Defect after August 2011, when they learned of the results of additional field incidents involving the Defective ACUs and recalls by other automakers.

74. Although Hyundai and Kia acknowledged in 2018 to safety regulators that some of the ACUs were defective, TRW has refused to acknowledge that their product is defective or initiate a recall of its Defective ACUs.

75. Toyota, to date, has refused to issue any recalls of the ACU Defect, despite the rising number of ACU failures in its own vehicles, the Fiat Chrysler, Hyundai, and Kia recalls, and the NHTSA investigation.

76.     At all times, Defendants are and were under a continuous duty to disclose to Plaintiff and members of the Classes the true standard, quality, and grade of the Class Vehicles and to disclose the ACU Defect and corresponding safety risks

77.     Defendants have knowingly, actively, and affirmatively concealed from, or failed to notify, Plaintiff, Class members, and the general public of the full and complete nature of the ACU Defect.

78.     Any applicable statute of limitations has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein which behavior is ongoing.

## II.    <u>Estoppel</u>

79.     Defendants were, and are, under a continuous duty to disclose to Plaintiff and proposed Class members the true character, quality, and nature of the Class Vehicles. They actively concealed the true character, quality, and nature of the vehicles, and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiff and proposed Class members reasonably relied upon Defendants knowing, and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## III.   <u>Discovery Rule</u>

80.    The causes of action alleged here did not accrue until Plaintiff and proposed Class members discovered that their vehicles had the Defective ACUs.

81.    Plaintiff and proposed Class members, however, had no realistic ability to discern that their vehicles were defective, until after either the Defective ACUs failed, or their vehicles were recalled. Even then, Plaintiff and proposed Class members would have had no reason to discover their causes of action because of Defendants' active concealment of the true nature of the defect.

## CLASS ACTION ALLEGATIONS

82.    The proposed Classes' claims all derive directly from a single course of conduct by Defendants. This case is about the responsibility of Defendants, at law and in equity, for their knowledge, conduct, and products. Defendants have engaged in uniform and standardized conduct toward the proposed Classes. They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of its statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective proposed Classes, the same legal standards govern. Additionally, many—and for some, all—states share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims. Accordingly, Plaintiff brings this lawsuit as a class action on her own behalf, and on behalf of all other persons similarly

situated, as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## I. <u>The Class</u>

83.    Plaintiff brings this action, and seeks to certify and maintain it as a class action, under Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or c(4), on behalf of herself, and a Nationwide Class defined as follows: All persons in the United States who purchased or leased a Class Vehicle.

84.    Plaintiff brings this action, and seeks to certify and maintain it as a class action, under Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or c(4), on behalf of herself, and a Florida sub-Class defined as follows: All persons in Florida who purchased or leased a Class Vehicle.

85.    Excluded from each Class are TRW and the Toyota Defendants; their employees, officers, directors, legal representatives, heirs, and successors; wholly or partly owned subsidiaries or affiliates of Defendants; Class Counsel and their employees; and the judicial officers, their immediate family members, and associated court staff assigned to this case.

## II. <u>Numerosity</u>

86.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1). There are millions of Class Vehicles nationwide, and hundreds of thousands of Class Vehicles in Florida. Individual joinder of all Class members is impracticable.

87.    Each of the Classes are ascertainable because their members can be readily identified using vehicle registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to the Class in compliance with Federal Rules of Civil Procedure 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Rule 23(d).

## III.    <u>Predominance of Common Issues</u>

88.    This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(2) and (b)(3), because questions of law and fact that have common answers and predominate over questions affecting only individual Class members. These include, without limitation, the following:

(a)    Whether the Class Vehicles suffer from the ACU ASIC Defect;

(b)    Whether Defendants knew, or should have known, about the ACU Defect, and, if so, how long Defendants have known of the defect;

(c)     Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and Class members;

(d)     Whether Defendants omitted and failed to disclose material facts about the Class Vehicles;

(e)     Whether Defendants' concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class members to act to their detriment by purchasing the Class Vehicles;

(f)     Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

(g)     Whether Defendants misrepresented that the Class Vehicles were safe;

(h)     Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, and sold with defective airbag components;

(i)     Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

(j)     Whether Defendants' statements, concealments, and omissions regarding the Class Vehicles, were material, in that a reasonable

consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

(k)    Whether Defendants violated State consumer protection statutes, and if so, what remedies are available under those statutes;

(l)    Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

(m)    Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and the Classes;

(n)    Whether the Class Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags at issue;

(o)    Whether Defendants have been unjustly enriched by its conduct; and

(p)    Whether Defendants should be declared responsible for notifying all Class members of the ACU Defect, and ensuring that all vehicles with the airbag ACU Defect are promptly recalled and repaired.

## IV.    <u>Typicality</u>

89.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(3), because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

## V. <u>Adequate Representation</u>

90.     Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

91.     Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor her counsel have interests adverse to those of the Classes.

## VI. <u>Superiority</u>

92.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), because Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final relief with respect to each Class as a whole.

93.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and fact regarding Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

94.     Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to

them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions; and the burden imposed on the judicial system by individual litigation—by even a small fraction of the Class—would be enormous, making class adjudication the superior alternative under Federal Rule of Civil Procedure 23(b)(3)(A).

95.    The conduct of this action as a class action presents far fewer management difficulties; far better conserves judicial resources and the parties' resources; and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public, of class treatment in this court making class adjudication superior to other alternatives under Federal Rule of Civil Procedure 23(b)(3)(D).

96.    Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Federal Rule of Civil Procedure 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff, or on its own determination, certify nationwide, statewide and/or multistate classes for claims

sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law, for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

97. The Classes expressly disclaim any recovery in this action for physical injury resulting from the ACU Defect without waiving or dismissing such claims. Plaintiff is informed and believes that injuries suffered in crashes as a result of Defective ACUs implicate the Class Vehicles; constitute evidence supporting various claims, including diminution of value; and are continuing to occur because of Defendants' delays and inaction regarding the commencement of recalls. The increased risk of injury from the ACU Defect serves as an independent justification for the relief sought by Plaintiff and the Classes.

## REALLEGATION AND INCORPORATION BY REFERENCE

98. Plaintiff realleges and incorporates by reference all of the preceding paragraphs and allegations of this Complaint, including the Nature of Claims, Factual Allegations, Tolling Allegations, and Class Action Allegations, as though fully set forth in each of the following Claims for Relief asserted on behalf of the Nationwide Class and the Florida Sub-Class

## CLAIMS FOR RELIEF

**I.    Nationwide Claims**

    **A.    Federal Claims**

### COUNT ONE
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301**
**(TRW and Toyota Defendants)**
**(Nationwide Class)**

98.    Plaintiff brings this Count against TRW and Toyota Defendants individually and on behalf of members of the Nationwide Class.

99.    This Court has jurisdiction to decide claims brought under 15 U.S.C. 6 § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

100.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

101.    Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit liability for the Class Vehicles is null and void.

102.    Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between the Defendants on the one hand, and Plaintiff and the other Class members on the other.

103.    Any limitations on the warranties are substantively unconscionable. The Defendants knew that the ACU and any vehicle containing the ACU was

defective and would continue to pose safety risks after the warranties purportedly expired. The Defendants failed to disclose the ACU Defect to Plaintiff and the other Class members. Thus, Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

104.    Plaintiff and each of the other Class members have had sufficient direct dealings with Toyota Defendants or its agents (dealerships) to establish privity of contract with Toyota.

105.    However, privity is not required here, because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between the Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for, and intended to benefit, consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the ACU Defect.

106.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action, and is not required to give the Defendants notice and an opportunity to cure, until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

107.   Furthermore, affording the Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford the Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

108.   Plaintiff and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because the Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Defective Vehicles by retaining them.

109.   The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of the

vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members, in connection with the commencement and prosecution of this action.

110.   Plaintiff also requests, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses, and costs they have incurred in attempting to rectify the ACU Defect in their vehicles. Such expenses and losses will continue as Plaintiff and Class members must take time off from work, pay for rental cars or other transportation arrangements, childcare, and the myriad of expenses involved in going through the process of correcting the ACU Defect and/or a potential recall.

111.   The right of Class members to recover these expenses as an equitable matter—to put them in the place they would have been but for the Defendants' conduct—presents common questions of law. Equity and fairness require the establishment by Court decree, and administration under Court supervision, of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

WHEREFORE Plaintiff and the Nationwide Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including

injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, attorney's fees and costs on behalf of the class, and any other relief to which Plaintiff and the Nationwide Class may be entitled.

### B.   Common Law and State Law Claims

### COUNT TWO
**Fraudulent Concealment**
**(TRW and Toyota Defendants)**
**(Nationwide Class)**

112.   Plaintiff brings this Count against TRW and Toyota Defendants individually and on behalf of members of the Nationwide Class.

113.   Plaintiff brings this claim against TRW and Toyota Defendants on behalf of herself and the members of the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts (case-dispositive differences) among various states' laws of fraudulent concealment. In the alternative, Plaintiff brings this claim against Defendants under the laws of the states where Plaintiff and Class Members reside and/or purchased their Class Vehicles.

114.   As described above, Defendants made material omissions and affirmative misrepresentations regarding the Class Vehicles and the Defective ACUs contained therein.

115.   Defendants concealed and suppressed material facts regarding the Defective ACUs— most importantly, the ACU Defect, which causes, among other

41

things, the Defective ACUs to fail during a crash event resulting in the non-deployment of airbags and seat belt pretensioners, thereby failing to protect drivers and passengers in collisions.

116. Defendants still have not made a full and adequate disclosure, continue to defraud Plaintiff and the Class, and continue to conceal material information regarding the ACU Defect.

117. Defendants had a duty to disclose the ACU Defect because they:

   a. Had exclusive and/or far superior knowledge and access to the facts, and Defendants knew the facts were not known to or reasonably discoverable by Plaintiff and the Class;

   b. Intentionally concealed the foregoing from Plaintiff and Class Members; and

   c. Made incomplete representations about the safety and reliability of the Defective ACUs and Class Vehicles, while purposefully withholding material facts from Plaintiff that contradicted these representations.

118. These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff and the Class. Whether a manufacturer's products

are safe and reliable and whether that manufacturer stands behind its products, are material concerns to a consumer. Further, Plaintiff and Class Members trusted Toyota Defendants not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety and to uphold its recall obligations under the Sale Agreement and governing laws.

119.    Defendants concealed and suppressed these material facts to falsely assure purchasers and consumers that the Defective ACUs and Class Vehicles could perform safely.

120.    Defendants also misrepresented the safety and reliability of the Defective ACUs and Class Vehicles, because they either (a) knew but did not disclose the ACU Defect; (b) knew that they did not know whether their safety and reliability representations were true or false; or (c) should have known that their misrepresentations were false.

121.    TRW Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for its ACU units, to protect its profits, and to avoid recalls that would hurt the brand's image and cost TRW money. It did so at the expense of Plaintiff and the Class.

122.    Toyota Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for its vehicles, to protect its profits,

and to avoid recalls that would hurt the brand's image and cost Toyota money. It did so at the expense of Plaintiff and the Class.

123.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts.

124.   Had they been aware of the Defective ACUs installed in the Class Vehicles and Defendants' callous disregard for safety, Plaintiff and the Class either would have paid less for their Class Vehicles or they would not have purchased or leased them at all. Plaintiff and Class members did not receive the benefit of their bargain as a result of Defendants' fraudulent concealment.

125.   Because of the concealment or suppression and/or misrepresentation of the facts, Plaintiff and the Class sustained damages because they own vehicles that diminished in value as a result of Defendants' concealment of, and failure to timely disclose, the serious ACU Defect in millions of Class Vehicles and the serious safety and quality issues caused by Defendants' conduct.

126.   The value of all Class members' vehicles has diminished as a result of Defendants' fraudulent concealment of the ACU Defect and made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

127.    Accordingly, Defendants are liable to Plaintiff and the Classes for their damages in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain or overpayment for the Class Vehicles at the time of purchase, the diminished value of the Defective ACUs and the Class Vehicles, and/or the costs incurred in storing, maintaining, or otherwise disposing of the Defective ACUs.

128.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, and with the aim of enriching Defendants. Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE Plaintiff and the Nationwide Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, attorney's fees and costs on behalf of the class, and any other relief to which Plaintiff and the Nationwide Class may be entitled.

**COUNT THREE**
**Unjust Enrichment**
**(TRW and Toyota Defendants)**
**(Nationwide Class)**

129.   Plaintiff brings this Count against TRW and Toyota Defendants individually and on behalf of members of the Nationwide Class.

130.   Plaintiff brings this claim on behalf of herself and the members of the Nationwide Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment. In the alternative, Plaintiff brings this claim under the laws of the states where Plaintiff and Class members reside and/or purchased their Class Vehicles.

131.   The Defendants have received and retained a benefit from the Plaintiff and inequity has resulted.

132.   The TRW Defendants benefitted through their unjust conduct by selling Defective ACU units at a profit while concealing and suppressing material facts to falsely assure purchasers and consumers.  Plaintiff and Class members overpaid for Class Vehicles containing a Defective ACU, and/or would not have purchased these Vehicles at all, and have been forced to pay other costs.

133.   The Toyota Defendants benefitted through their unjust conduct by selling Class Vehicles with a concealed safety-and-reliability related defect at a profit for more than these Vehicles were worth to Plaintiff and Class members, who overpaid for these Vehicles, and/or would not have purchased these Vehicles at all, and who have been forced to pay other costs.

134.   It is inequitable for the Defendants to retain these benefits.

46

135.   Plaintiff does not have an adequate remedy at law.

136.   As a result of the Defendants' conduct, the amount of its unjust enrichment should be disgorged in an amount to be proven at trial.

WHEREFORE Plaintiff and the Nationwide Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, attorney's fees and costs on behalf of the class, and any other relief to which Plaintiff and the Nationwide Class may be entitled.

## II.    Claims Brought on Behalf of the Florida Consumer Sub-Class

### COUNT FOUR
### Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")
### Fla. Stat. §§ 501.201, *et seq.*
### (TRW and Toyota Defendants)
### (Florida Sub-Class)

137.    Plaintiff brings this Count against TRW and Toyota Defendants individually and on behalf of members of the Florida Sub-Class.

138.    Plaintiff and the Florida Sub-Class are "consumers" within the meaning of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

139.    Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

140.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

141.    In the course of TRW's and Toyota's business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

142.    Defendants also engaged in unlawful trade practices by employing

deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective ACUs installed in them.

143.  As alleged above, TRW knew or should have known of the ACU Defect no later than January 2016, through its design and development of the ACU, countless airbag non-deployment incidents, customer complaints against its products and automakers' vehicles, lawsuits against itself and the automakers, internal investigations into airbag non-deployment incidents, ACU and ASIC government investigations, and public recalls.

144.  As alleged above, Toyota knew or should have known of the ACU Defect no later than January 2016, though its approval of the ACU design, countless airbag non-deployment incidents, customer complaints against its products and automakers' vehicles, lawsuits against itself, TRW, and automakers, internal investigations, government investigations, and public recalls.

145.  By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the Defective ACUs installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of FDUTPA. Defendants deliberately withheld the information

about the propensity of the Defective ACUs to fail to deploy vehicle safety systems, including airbags and seatbelt pretensioners, in a collision event.

146.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious ACU Defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective ACUs installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

147.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Florida Sub-Class, about the true safety and reliability of Class Vehicles and/or the Defective ACUs installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

148.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective ACUs installed in them with an intent to mislead Plaintiff and the Florida Sub-Class.

149.   Defendants knew or should have known that their conduct violated FDUTPA.

150.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them that were either false or misleading. Defendants' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles and/or the Defective ACUs as safe and reliable, despite their knowledge of the ACU Defect or their failure to reasonably investigate it.

151.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

152.   Defendants owed Plaintiff and the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them because Defendants:

    a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    b.   Intentionally concealed the foregoing from Plaintiff and the Florida Sub-Class; and/or

    c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding

material facts from Plaintiff and the Florida Sub-Class that contradicted these representations.

153.   Because Defendants fraudulently concealed the Defective ACU installed in Class Vehicles, resulting in a raft of negative publicity once the ACU Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

154.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective ACUs in Class Vehicles were material to Plaintiff and the Florida Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

155.   Plaintiff and the Florida Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and Defendants' complete disregard for safety, Plaintiff and the Florida Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

156.   Plaintiff and the Florida Sub-Class risk irreparable injury as a result of Defendants' acts and omissions in violation of FDUTPA, and these violations present a continuing risk to Plaintiff, the Florida Sub-Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

157.   As a direct and proximate result of Defendants' violations of FDUTPA, Plaintiff and the Florida Sub-Class have suffered injury-in-fact and/or actual damages.

158.   Plaintiff and the Florida Sub-Class are entitled to recover their actual damages under Florida Statute § 501.211(2), and attorneys' fees under Florida Statute § 501.2105(1).

159.   Plaintiff and the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under FDUTPA.

WHEREFORE Plaintiff and the Florida Sub-Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Toyota Defendants' wrongful acts and practices, restitution, attorney's fees and costs on behalf of the class, and any other relief to which Plaintiff and the Florida Sub-Class may be entitled.

## COUNT FIVE
### Breach of Express Warranties
### (Toyota Defendants)
### (Florida Sub-Class)

160.    Plaintiff brings this Count against Toyota Defendants individually and on behalf of members of the Florida Sub-Class.

161.    For each Class Vehicle sold by Toyota, an express written warranty was issued that covered the vehicle, including but not limited to the ACU, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

162.    Toyota breached its warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

163.    Toyota continues to breach its warranties by failing to repair or replace Plaintiff's vehicle as warranted.

164.    As a result of Toyota's continued breach of its warranties, Plaintiff has been harmed and suffered actual damages. In addition to out-of-pocket and consequential damages, Plaintiff was caused to purchase and retain a vehicle of diminished value which fails to meet ordinary and reasonable consumer expectations regarding safe and reliable operation.

WHEREFORE Plaintiff and the Florida Sub-Class seek full compensatory

and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, attorney's fees and costs on behalf of the class, and any other relief to which Plaintiff and the Florida Sub-Class may be entitled.

**COUNT SIX**
**Breach of Implied Warranties**
**(TRW and Toyota Defendants)**
**(Florida Sub-Class)**

165.   Plaintiff brings this Count against TRW and Toyota Defendants individually and on behalf of members of the Florida Sub-Class.

166.   Defendants impliedly warranted that the ACU Units and/or Class Vehicles, which it designed, manufactured, sold, or leased to Plaintiff and members of the Florida Sub-Class, were merchantable, fit and safe for their ordinary use, and not otherwise injurious to consumers.

167.   Because the Class Vehicles are equipped with the Defective ACUs, the vehicle purchased or leased and used by Plaintiff and Florida Sub-Class members is unsafe, unfit for use when sold, threatens injury to its occupants, and is not merchantable. Defendants breached the implied warranty of merchantability in the sale or lease of the Defective ACU Units and/or Class Vehicles to Plaintiff and members of the Florida Sub-Class in that the units and/or vehicles were not fit for their ordinary purpose and not merchantable.

168.    As a direct and proximate result of Defendants breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff has been harmed and suffered actual damages. In addition to out-of-pocket and consequential damages, Plaintiff was caused to purchase and retain a vehicle of diminished value which fails to meet ordinary and reasonable consumer expectations regarding safe and reliable operation.

WHEREFORE Plaintiff and the Florida Sub-Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendants' wrongful acts and practices, restitution, attorney's fees and costs on behalf of the class, and any other relief to which Plaintiff and the Florida Sub-Class may be entitled.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of herself and all others similarly situated, request the Court to enter judgment against the TRW and Toyota Defendants, as follows:

(a)    An order certifying the proposed Class, designating Plaintiff as the named representative of the Class, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 18 and23;

(b)     An order enjoining the Toyota Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive relief that the Court deems just and proper;

(c)     An award to Plaintiff and Class members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

(d)     An award to Plaintiff and Class members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages, and for reasonable attorney fees;

(e)     A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective ACUs in Plaintiff's and Class members' Class Vehicles, can be made and paid, such that the TRW and Toyota Defendants, not the Class members, absorb the losses and expenses fairly traceable to the recalls of the vehicles and correction of the Defective ACUs;

(f)     A declaration that the TRW and Toyota Defendants must disgorge, for the benefit of Plaintiff and Class members, all or part of the ill-gotten

profits they received from the sale or lease of the Class Vehicles or make full restitution to Plaintiff and Class members;

(g)     An award of attorneys' fees and costs, as allowed by law;

(h)     An award of prejudgment and post judgment interest, as provided by law; and

(i)     Such other relief as may be appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial as to all issues triable by a jury.

Date: August 8, 2019                    Respectfully Submitted,

*/s/ F. Jerome Tapley*
F. Jerome Tapley
Florida Bar No. 0022066
Hirlye R. "Ryan" Lutz, III
*(Pending Admission Pro Hac Vice)*
Adam W. Pittman
*(Pending Admission Pro Hac Vice)*
Lauren S. Miller
*(Pending Admission Pro Hac Vice)*
**CORY WATSON P.C**.
2131 Magnolia Ave. S.
Birmingham, AL 35205
Ph: (205) 328-2200
Fax: (205) 324-7896
E-Mail: jtapley@corywatson.com
rlutz@corywatson.com
apittman@corywatson.com
lmiller@corywatson.com

Nicholas W. Armstrong
*(Pending Admission Pro Hac Vice)*
Oscar M. Price, IV
*(Pending Admission Pro Hac Vice)*
**PRICE ARMSTRONG, LLC**

2226 First Avenue South, Unit 105
Birmingham, AL 35233
Phone: 205.208.9588
Fax: 205.208.9598
E-mail: nick@pricearmstrong.com
oscar@pricearmstrong.com

Ryan Hobbs
Florida Bar No. 44179
**BROOKS, LEBOEUF, BENNETT,**
**FOSTER & GWARTNEY, PA**
909 East Park Avenue
Tallahassee, Florida 32301
Phone: 850.222.2000
Fax: 850.222.9757
rhobbs@tallahasseeattorneys.com

*Attorneys for Plaintiff*